# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 20-210V
### Filed: July 12, 2022

LINDSAY CORUM, as Legal
Representative of the Estate of
STEPHEN M. CORUM, Deceased, on
behalf of the Estate of MARSHALL
WAYNE CORUM, Deceased,

                    Petitioner,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,

                    Respondent.

Special Master Horner

Attorneys' fees and costs;
Reasonable basis; influenza (flu)
vaccine; rhabdomyolysis; metabolic
encephalopathy; legal representative

*Otwell Sayers Rankin, Bonar, Bucher & Rankin, PSC, Covington, KY, for petitioner.*
*Julia Marter Collison, U.S. Department of Justice, Washington, D.C., for respondent.*

## Decision Regarding Attorneys' Fees and Costs[1]

On February 26, 2020, petitioner, Lindsay Corum, filed this claim as a legal representative of the estate of her deceased husband on behalf of the estate of her deceased father-in-law under the National Vaccine Act. 42 U.S.C. § 30aa-11. Petitioner sought compensation for her deceased father in law's coma, loss of consciousness, confusion, rhabdomyolysis, elevated creatinine levels, liver failure, altered mental status, dementia, metabolic encephalopathy, personality change, lethargy, unresponsiveness, pain, fatigue, and other adverse symptoms that led to his death as a result of his influenza ("flu") vaccination that he received on January 24, 2020. (ECF No. 1.)  Ultimately, petitioner moved to voluntarily dismiss the case and petitioner's motion to dismiss was granted on June 7, 2021.

---

[1] Because this decision contains a reasoned explanation for the special master's action in this case, it will be posted on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. *See* 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).  **This means the decision will be available to anyone with access to the Internet.**  In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information the disclosure of which would constitute an unwarranted invasion of privacy. If the special master, upon review, agrees that the identified material fits within this definition, it will be redacted from public access.

Petitioner filed a motion for attorneys' fees and costs. (ECF No. 30.) Respondent opposes this motion on the grounds that petitioner lacked a reasonable basis for filing this petition. (ECF No. 31, p.1.) For the reasons described below, petitioner is not entitled to an award of attorneys' fees and costs.

## I.    PROCEDURAL HISTORY

On February 26, 2020, petitioner filed this claim along with the deceased's medical records. (ECF No. 1.) This case was initially assigned to Chief Special Master Brian Corcoran as part of the pre assignment review ("PAR") process. (Dkt Mar. 2, 2020.) On July 8, 2020, petitioner filed a statement of completion, and the case was reassigned to my docket. (ECF No. 8,10.)

On October 1, 2020 I held a status conference to discuss the next steps for the parties to take in this case.  (ECF No. 14.)  During the conference, respondent's counsel indicated that petitioner may lack  a reasonable basis to pursue this claim given the underlying merits of the case.  I noted an additional concern that petitioner did not have standing to bring this case as the estate representative of her husband rather than the estate representative of the deceased vaccinee.  I cautioned that the standing issue could also affect any reasonable basis determination.  Petitioner was ordered to address the standing issue either through additional filings or through briefing explaining why petitioner should be considered a legal representative under the Vaccine Act. (*Id.*)

Initially, petitioner expressed an intention to become estate representative for the decedent vaccinee.  (ECF No. 16.)  Ultimately, however, on June 4, 2021, petitioner filed a motion to voluntarily dismiss her claim without any further evidentiary filings. (ECF No. 24.) The case was dismissed for failure to establish a prima facie case of entitlement to compensation on July 8, 2021. (ECF No. 26.)

On January 7, 2022, petitioner filed motion seeking $22,132.63 in attorneys' fees and $653.26 in costs. (ECF No. 30, p.1.) On January 20, 2022, respondent filed a response requesting the petitioner's motion for an award of fees and costs be denied on the grounds that her claim had no reasonable basis. (ECF No. 31, p. 1.)  Petitioner filed no reply.

## II.    FACTUAL HISTORY

Marshall Corum received his flu vaccination on January 24, 2018. (Ex.6, p. 1.) He was an 86-year-old male with underlying health issues including dyslipidemia, diabetes, hypertension, atrial fibrillation, chronic congestive heart failure, systolic dysfunction, and coronary artery disease that required stent placement and bypass surgery. (Ex. 9, p. 129-204; Ex. 14, p. 1-57.) At the time of his vaccination, petitioner represents that Mr. Corum was doing well and was able to live alone, drive, grocery shop, walk, and help with his son's business. (Ex. 11, p. 1-2.)   However, on February 19, 2018, twenty-six days after receiving his flu vaccine, Mr. Corum was admitted to the hospital after falling

in his home. (Ex. 9, p. 2.) Mr. Corum had last been seen on Saturday, two days prior to being found, and it was not known how long he was down. (*Id.* at 29.)  When he was found, Mr. Corum was "very confused and "was not communicating effectively." (*Id.*)

Petitioner stated in an affidavit that within a week of his flu vaccine Mr. Corum began complaining of ailments out of the normal for him including headaches, backaches, leg pain, and tiredness. (Ex. 11, p. 2.)  Additionally, he began showing signs of dementia like misplacing his keys, money, and phone. (*Id.*) The contemporaneous medical records indicate, however, that Mr. Corum's son reported to physicians that "last week he himself was in the hospital and he would call the patient and ask him to bring himself to the hospital.  The patient was able to drive to the hospital, find things [at] his office, and other tasks that he assigned him." (Ex. 9, p. 28.)  The patient was characterized upon presentation as "much more confused than normal." (*Id.*)  The discharge summary explained that:

> [p]atient was living at home, and his son went to check on him when his son found him lying on the ground.  The patient was confused and was not communicating effectively.  EMS was called, and patient was brought to the hospital . . . the patient's confusion, altered mental status, and underlying cognitive decline with dementia worsened with his admission . . . The son was very concerned about the rapid decline of his father.  I had a detailed discussion with him over the phone.  His concerns were that the week prior to his hospital admission, he was walking on the treadmill, able to drive a vehicle, and was alert and oriented x3.  He was very concerned about his overall change in mental status and the fact that he is now only oriented x1.

(*Id*. at 2-3.)

Mr. Corum was diagnosed with rhabdomyolysis caused by his fall, and he was treated with IV hydration and antibiotics. (*Id.* at 6, 30.) His confusion was attributed to a metabolic encephalopathy "simply related to his rhabdomyolysis" along with possible underlying dementia (*Id.*)  Thereafter, Mr. Corum continued to worsen, and the rhabdomyolysis led to acute heart failure, hypoxia, and pneumonia. (*Id.* at 4.) Mr. Corum began experiencing severe dementia, encephalopathy, and inability to eat, and his doctors recommended he be transferred to palliative care. (Ex. 7, p. 269.)

Mr. Corum's health continued to decline until he died on March 7, 2018. (Ex. 5, p. 1.)  His death certificate identifies his immediate cause of death as pneumonia and respiratory failure. (*Id.*)

## III.    PARTY CONTENTIONS

### A. Petitioner's Position

In her motion, petitioner contends that she brought this claim in good faith and had a reasonable basis to file the petition because

Deceased's medical records showed the receipt of the FLUAD vaccine on January 24, 2018, and onset of symptoms and physical decline within an appropriate time frame and evidence of multiple novel diagnoses by the treating physicians.  Given the body of cases involving this injury that have progressed through this Court, it is certainly reasonable to assert a claim that a flu vaccine can cause rhabdomyolysis, acute kidney failure, metabolic encephalopathy, and dementia.[2]  Petitioner herein presented a breadth of medical record as evidentiary support of Deceased's acutely presenting condition and ultimate death which proximately followed his receipt of the flu vaccine.

(ECF No. 30, p. 6.)

Petitioner stresses that the reasonable basis standard "does not look to the 'likeliness of success but more to the feasibility of the claims." (*Id*. at 6-7 (quoting *Chuisano v. United States*, 116 Fed.Cl. 276, 285 (2014).)  Petitioner contends that "[t]he law of reasonable basis and the totality of the circumstances test do not require diagnostic or etiologic certitude as a precondition to filing a petition." (*Id*. at 6.)  Petitioner contends that the medical records demonstrate the this was a "viable claim" at the time of filing. (*Id*. at 7.)

## B. Respondent's Position

Respondent disagrees that petitioner had a reasonable basis to file this petition because Mr. Corum's medical records provide no objective basis for asserting a vaccine-related injury. (ECF No. 31, p. 1.) Specifically, respondent contends that "nothing in the medical records filed describing the sequence of events of Mr. Corum's illness and death suggests any association with or contribution by the vaccine in question." (*Id*. at 6.)  Respondent stresses that the medical records show Mr. Corum to have been 86 years old with multiple underlying conditions; however, they also note Mr. Corum to have been feeling well during the three weeks between the time of his vaccination and his fall.  (*Id*.)  He asserts that nothing in the record supports that the flu vaccine caused the decedent's fall, subsequent decline, or death. Respondent stresses that neither Mr. Corum's death certificate nor any of his treating physicians reference his flu vaccine as a cause of illness or death.  Accordingly, respondent argues that petitioner has not demonstrated the requisite "more than a mere scintilla of evidence" required to support a reasonable basis.  (*Id*. at 7.)

Respondent also argues that petitioner's claim "when filed, had jurisdictional deficiencies that made success unlikely.  At the time of filing, petitioner had not provided proof of her capacity to file as legal representative of the vaccinee.  Petitioner made no effort to remedy this deficiency."  (*Id*.)

---

[2] Petitioner did not cite any specific case(s) in support of this contention.  Upon my own cursory review of prior cases, I did not locate any prior decisions that support petitioner's contention.

## IV.    LEGAL STANDARD

The Vaccine Act permits an award of reasonable attorneys' fees and costs. § 15(e). Petitioners who are denied compensation for their claims brought under the Vaccine Act may be awarded attorneys' fees and costs "if the Special Master or Court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." 42 U.S.C. § 300aa-15(e)(1); *Cloer v. Sec'y of Health & Human Servs.*, 675 F.3d 1358, 1360–61 (Fed. Cir. 2012). Such an award is within the discretion of the Special Master. 42 U.S.C. § 300aa-15(e)(1). Thus, even if a claim is brought in good faith and has a reasonable basis, a Special Master may still deny attorneys' fees. *See* 42 U.S.C. § 300aa-15(e)(1); *Cloer*, 675 F.3d at 1362. "Good faith" and "reasonable basis" are two distinct requirements under the Vaccine Act. *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017). Good faith is a subjective inquiry while reasonable basis is an objective inquiry. *See Cottingham v. Sec'y of Health & Human Servs.*, 971 F.3d 1337, 1342 (Fed. Cir. 2020).. In this case, petitioner's good faith is not challenged, so the only question is whether there was a reasonable basis for filing the petition.

For the reasonable basis requirement, "the burden is on the petitioner to affirmatively demonstrate a reasonable basis." *McKellar v Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 305 (2011). Because causation is a necessary element of a petition, the petitioner must point to evidence of a causal relationship between the administration of the vaccine and the injuries in order to establish that a reasonable basis for the claim existed when the petition was filed. *Cottingham*, 971 F.3d. at 1346. However, the evidentiary standard for establishing a reasonable basis as a prerequisite to an award of attorneys' fees and costs is lower than the evidentiary standard for being awarded compensation under the Vaccine Act. Petitioner need not prove a likelihood of success. *See Woods v. Sec'y of Health & Human Servs.*, No. 10-377V, 2012 WL 4010485, at *6-*7 (Fed. Cl. 2012). Instead, the "totality of the circumstances" is evaluated to determine whether there is enough objective evidence to constitute "more than a mere scintilla but less than a preponderance of proof". *Cottingham*, 971 F.3d at 1344, 1346; *see also Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 287 (Fed. Cl. 2018).

More than a mere scintilla of evidence has been characterized as "evidence beyond speculation that provides a sufficient basis for a reasonable inference of causation*." Cottingham v. Sec'y of Health & Human Servs.,* 154 Fed. Cl. 790, 795 (2021) (Citing *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 765 (4th Cir. 2021)). The determination of whether there is "more than a mere scintilla" of objective evidence supporting causation may be satisfied by circumstantial evidence, but there cannot be an unsupported basis for the claim. *See Cottingham*, 971 F.3d. at 1346. While a petitioner does not need to show a certain likelihood of success, a temporal relationship between the vaccine and the alleged symptoms by itself is not sufficient to establish a reasonable basis. *Compare Bekiaris v. Sec'y of Health & Human Servs.*, 140 Fed. Cl. 108 (Fed. Cl. 2018) (finding no reasonable basis for an award for attorneys' fees and costs where petitioner only showed a temporal proximity between

her third injection of the HPV vaccine and the onset of her symptoms, i.e., hives and skin irritation, without submitting an expert report providing evidence that the HPV vaccine was the cause of her injuries), *with A.S. by Svagdis v. Sec'y of Health & Human Servs.*, No. 15-520V, 2020 WL 3969874 (Fed. Cl. Spec. Mstr. June 4, 2020) (finding a reasonable basis for an award for attorneys' fees and costs where petitioners showed more than a temporal proximity between their daughter's vaccines and her symptoms by submitting four expert reports of physicians offering medical opinions and medical literature in support of potential causation); *see also Althen v. Sec'y of Health & Hum. Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005) ("a mere showing of a proximate temporal relationship between vaccination and injury, nor a simplistic elimination of other potential causes of the injury suffices, without more, to meet the burden of showing actual causation." )

An affidavit constitutes objective evidence that must be considered in determining whether there is a reasonable basis when it contains testimony the witness is competent to give, but a special master is not required to find that the affidavit alone constitutes more than a mere scintilla of evidence. *James- Cornelius*, 984 F.3d. at 1380-81. Although affidavits cannot be considered "categorically not objective," if an affidavit is unsubstantiated by any further evidence, it may not be sufficient to bestow a reasonable basis for filing a petition. *See, e.g. Cottingham  v. Sec'y of Health & Hum. Servs.*, No. 15-1291V, 2021 WL 6881248, at *37 (Fed. Cl. Spec. Mstr. Sept. 27, 2021). Particularly, "medical records may indeed serve as important corroborating evidence for evaluating testimony's credibility. . . ." *James Cornelius*, 984 F.3d. at 1380.  "A fair understanding of the Vaccine Act as a whole indicates that the analysis of reasonable basis would at least consider whether medical records support the claims set forth in the petition"; therefore, if medical records do not support a finding of reasonable basis, then a Special Master may conclude that there in not more than a mere scintilla of evidence to merit compensation of attorneys' fees and costs. *Cottingham v. Sec'y of Health & Human Servs.,* No. 15-1291V, 2021 WL 347020, at *18 (Fed. Cl. Spec. Mstr. Jan. 7, 2021.)

## V.    ANALYSIS

### A. Underlying Merits

Petitioner stresses that there was a temporal relationship between the vaccination and Mr. Corum's new illnesses that led to his death. However, even though a petitioner may demonstrate a reasonable basis circumstantially, as explained above, a mere showing of a proximate temporal relationship between vaccination and injury is not sufficient standing alone to demonstrate a reasonable basis. *E.g. Bekiaris*, 140 Fed. Cl. at 114-15.  On this record, there is no basis to suspect vaccine causation.

Mr. Corum was elderly with a number of underlying conditions and there is very little to suggest that he was experiencing any post-vaccination decline prior to his fall. The treating physicians confirmed that the cause of Mr. Corum's fall was unknown.[3]

---

[3] To the extent they opined regarding the underlying cause of petitioner's fall, they suggested he may have had an infection at that time.  (Ex. 9, p. 26.)

(Ex. 9, p. 26.)  Although petitioner filed an affidavit indicating that Mr. Corum began experiencing new symptoms of physical and mental decline within one week of his flu vaccine, the reported symptoms were nonspecific and there are no medical records to confirm the assertion or to substantiate the further claim that such symptoms could be attributable to vaccination. To the contrary, the contemporaneous medical records reflect that Mr. Corum's son reported to doctors that Mr. Corum had been in his usual state of health prior to his fall and that he was "much more confused than normal" when he was found after the fall. (Ex. 9, p. 28.)  In her affidavit, petitioner acknowledges that, while physically active and living alone, Mr. Corum was not fully independent prior to vaccination. (Ex. 11, p. 1.)  Rather, his son acted as caretaker, helping with "things that most elderly people tend to need help with," including housekeeping and tracking his finances and medications (*Id*.)

After Mr. Corum's fall, he was brought to the hospital where he was diagnosed with rhabdomyolysis likely attributable to his fall, along with metabolic encephalopathy likely resulting from the rhabdymyolysis. (Ex. 9, pp. 6, 30; Ex .7, p. 28.). At the hospital, he required aggressive IV hydration to prevent him from acute renal failure (Ex. 9, p.2.) This aggressive course of IV fluids sent him into chronic systolic heart failure (*Id*.) His medical records show that in addition to his underlying issues, rhabdomyolysis diagnosis, and chronic systolic heart failure, he acquired pneumonia and C. difficile in the hospital. His hospital acquired pneumonia caused him to go into sepsis, and decedent's immediate cause of death was determined to be pneumonia around one week later. (Ex. 7, p. 7; Ex. 5, p.1) None of Mr. Corum's treating physicians offered any opinion supporting the notion that any of his symptoms, conditions, or death, were vaccine caused.  Nor did they opine that petitioner had experienced any preceding post-vaccination symptoms.  The death certificate confirms the causes of death as pneumonia and respiratory failure. (Ex. 5.)

Despite this, petitioner argues that other cases that have progressed through the vaccine program show that there can be a reasonable inference of causation. However, claiming that "a body of cases involving [this] injury have progressed through this court" does not help to demonstrate the potential viability of *this claim*, especially where, as here, none of the treating physicians raised even a suspicion of vaccine causation. Moreover, petitioner left this assertion entirely unsubstantiated by failing to cite any supporting caselaw.  Petitioner bears the burden of affirmatively demonstrating she had a reasonable basis for filing the petition.[4] *McKellar*, 101 Fed. Cl. at 305.

## B.  Legal Representative Issue

As explained above, petitioner lacked a reasonable basis for the filing of this petition based on the underlying merits of the claim.  However, even if one concluded that Mr. Corum's medical history was sufficient to establish a reasonable basis factually,

---

[4] Thus, for example, in *Bekiaris,* petitioner's counsel "indicated that he had informal or anecdotal evidence based on internet research linking the vaccine to [petitioner's] conditions."  140 Fed. Cl. at 116. However, the Court of Federal Claims noted that petitioner did not provide this evidence to the special master.  *Id.*  Because the evidence did not appear in the record, the court could not consider whether it would have been sufficient to support a reasonable basis.  *Id.*

petitioner's petition also presented a significant, and ultimately unresolved, standing issue that would further prevent any demonstration of a reasonable basis for the filing of the petition.  Specifically, respondent argues that "[a]t the time of filing, petitioner had not provided proof of her capacity to file as legal representative of the vaccinee. Petitioner made no effort to remedy this deficiency." (ECF No. 31, p. 7.)  In a prior order, I explained the issue presented by this case as follows:

> Here, the vaccinee was Marshall Wayne Corum, who passed away prior to the filing of this petition.  According to his will, as filed by petitioner, Stephen Corum, his son and petitioner's spouse, was appointed executor with rights to retain attorneys and settle claims on behalf of the estate.  However, Stephen Corum also passed away, subsequent to his father's death but prior to the filing of this petition.  Petitioner has filed an order appointing her administratrix of her husband's estate.

(ECF No. 14, pp. 1-2.)

Pursuant to section 11(b)(1)(A) of the Vaccine Act, "any person who has sustained a vaccine-related injury, the legal representative of such person if such person is a minor or disabled, or the legal representative of any person who died as a result of the administration of a vaccine set forth in the Vaccine Injury Table may, if the person meets the requirements of subsection (c)(1), file a petition for compensation under the program."  Section 33 of the Vaccine Act defines a legal representative as someone who qualifies to be a legal guardian under state law.  The definition does not specifically address estate representatives.  However, the Federal Circuit has confirmed that estate representatives may file petitions under the Vaccine Act Vaccine for any deceased vaccinee regardless of whether that person's death was vaccine related. *Figueroa v. Sec'y of Health & Human Servs.*, 715 F.3d 1314 (Fed. Cir. 2013).  Vaccine Rule 2(c)(2)(C) requires that in order to commence a proceeding for compensation, a petition must be filed that is accompanied by, *inter alia*, proof of the petitioner's authority to file an a representative capacity, specifically:  "If the petition is filed on behalf of a deceased person or is filed by an individual other than the injured person or the parent of an injured minor, the petition must also be accompanied by documents establishing the authority to file in a representative capacity or a statement explaining when such documentation will be available."

Thus, for example, in a prior case, a special master denied a surviving spouse's motion to be substituted as petitioner for her late husband's vaccine injury claim where she had declined to be appointed estate representative.  *Sanders, Sr. v. Sec'y of Health & Human Servs.*, No. 99-430V, 2007 WL 853229 (Fed. Cl. Spec. Mstr. Mar. 6, 2007). The special master persuasively explained that

> Being the heir, however, is an issue separate from that of appointment as the executor. His will does not *appoint* her as executor of his estate; his will expresses his desire that she be so appointed. State courts, normally probate courts, appoint executors. While they usually follow the desires

expressed in the decedent's will, they are not required to do so. An individual may be capable of inheriting an estate, but through physical or mental infirmity or lack of desire, may be unable to serve as executor. While motions to recaption cases are routinely granted when the original petition was filed on behalf of a minor and the petitioner has reached the age of majority, this case presents a different issue.

*Id*. at *3 (emphasis original).  The special master permitted petitioner's counsel to refile the motion after appointment of an executor.  *Id*. at *5.

Because Vaccine Rule 2(c) contemplates that documentation of representative capacity may not be immediately available at the time a petition is filed, I held a status conference during which I advised petitioner's counsel of my concern that there was a threshold issue of petitioner's standing to bring this claim and provided petitioner an opportunity to address the issue.  I explained

First, while petitioner has filed an order of appointment relative to her husband's estate, she has not filed any documentation indicating that a court of competent jurisdiction actually appointed her husband the legal representative of his father's estate.  Because I am not in a position to assess the validity of Marshall Wayne Corum's will, I am not prepared to accept it as documentation of Stephen Corum's representative capacity under either the Vaccine Act or Vaccine Rules.  Second, even if additional documentation exists establishing that Stephen Corum was initially a legal representative of Marshall Wayne Corum's estate, I am also highly skeptical that such representative capacity could survive his own death under applicable law.  Accordingly, I am not prepared to let this case proceed without an order of appointment (or equivalent) identifying a currently living estate representative for the estate of Marshall Wayne Corum who can act as petitioner.  Ms. Corum will need to determine whether she is able to become the representative of Marshall Wayne Corum's estate herself or otherwise determine who has the representative capacity necessary to be substituted as petitioner in this case.

(ECF No. 14, p. 2.)  I directed petitioner's counsel to file a status report confirming one of the following:  (1) Ms. Corum intends to become legal representative of the estate of Marshall Wayne Corum and has initiated that process in the relevant court; (2) petitioner has identified a different individual who is (or is in the process of becoming) legal representative and will be substituted as petitioner; or (3) petitioner otherwise intends to file a legal brief seeking to establish why this case should not be dismissed for lack of standing.  (*Id*. at 2.)

Following the status conference, petitioner confirmed that she "intends to become legal representative of the Estate of Marshall Wayne Corum." (ECF No. 16.) However, petitioner ultimately moved to voluntarily dismiss this case without filing any additional evidence relating to her representative capacity.  Petitioner did not specifically

address the question of her representative capacity in either her motion to dismiss or her motion for attorneys' fees and costs. (ECF Nos. 24, 30.)

Although most reasonable basis determinations focus on the underlying merits of an injury claim, the Federal Circuit has confirmed that "[t]he good faith and reasonable basis requirements apply to the claim for which the petition was brought; this applies to the entire claim . . ." *Cloer v. Sec'y of Health & Human Servs.*, 675 F.3d 1358, 1362 (Fed. Cir. 2012)(en banc), *aff'd sub nom Sebelius v. Cloer*, 569 U.S. 369 (2013); *see also Simmons v. Sec'y of Health & Human*, 875 F.3d 632, 636 (Fed. Cir. 2017)(stating of the prior *Cloer* decision that "we explained that this 'statute of limitation issue,' i.e. whether a petitioner can received attorneys' fees despite filing a petition after the statute of limitations has expired, may be encompassed within the reasonable basis inquiry, along with 'the underlying merits of the claim.'")  Importantly, however, a defective claim is not *per se* ineligible for attorneys' fees and costs.  Rather, a reasonable basis assessment may be performed the same as with any other unsuccessful petition. *Sebelius*, 569 U.S. at 380 (explaining that "[t]he text of the statute is clear; like any other unsuccessful petition, an untimely petition brought in good faith and with a reasonable basis that is filed with – meaning delivered to and received by – the clerk of the Court of Federal Claims is eligible for an award of attorney's fees.")

Based on all of the above, petitioner did not have a reasonable basis to file this petition due to this standing issue.  There is no evidence available on this record to conclude petitioner was ever the legal representative of the decedent vaccinee, i.e. Marshall Wayne Corum, such that she would be permitted to bring a claim on behalf of his estate under the Vaccine Act.  Instead, petitioner has established only that she is the estate representative of her late husband, Stephen Corum. Moreover, this defect was obvious at the time of the initial filing of this petition. In fact, when filing the petition petitioner did not even attempt to style herself as Marshall Wayne Corum's actual legal representative.  Instead, she filed this case as: "LINDSAY CORUM, as Legal Representative of the Estate of STEPHEN M. CORUM, Deceased on behalf of the Estate of MARSHALL WAYNE CORUM, Deceased." (ECF No. 1, p. 1.)  Petitioner was provided an opportunity to address this issue and, although she expressed the intention of becoming Marshall Wayne Corum's estate representative in the future, she neither remedied the defect with additional filings before dismissal nor otherwise explained why she should be viewed as the legal representative of Marshall Wayne Corum under either the Vaccine Act or applicable state law.

In his response to petitioner's motion for attorneys' fees and costs, respondent further characterizes this issue as relating to "jurisdictional deficiencies."  (ECF No. 31, p. 7.)  Importantly, however, while I agree with respondent's ultimate contention that the above-discussed standing issue should weigh against any award of attorneys' fees and costs based on my reasonable basis analysis, his further assertion that this result from a jurisdictional issue is less clear.[5] While it may be possible that attorneys' fees and

---

[5] The Federal Circuit previously ruled that section 15(e) of the Vaccine Act "simply authorizes fee awards in cases already within the jurisdiction of the Court of Federal Claims" and that "[w]here it does address jurisdiction, the Vaccine Act gives the Court of Federal Claims (and its special masters) jurisdiction 'over

costs should be denied on jurisdictional grounds in this case as respondent suggests, it is not necessary to resolve that question as I have otherwise concluded, consistent with the Supreme Court's guidance in *Sebelius v. Cloer*, that petitioner *did not have a reasonable basis* to file this action given her clearly inadequate attempt to demonstrate her representative capacity for the decedent vaccinee.[6]

## VI.    CONCLUSION

For the reasons set forth above, petitioner did not establish a reasonable basis for the filing of her petition as required for an award for attorneys' fees and costs. Accordingly, an award for attorneys' fees and costs is denied.

---

proceedings to determine if a petitioner under section 300aa-11 of this title is entitled to compensation under the [Vaccine Injury Compensation] Program and the amount of such compensation.'" *Martin by Martin v. Sec'y of Health & Human Servs.*, 62 F.3d 1403, 1406 (Fed. Cir. 1995).  The Circuit concluded that the Martins were jurisdictionally barred from bringing a claim pursuant to section 11(a)(6), which precludes petitions from persons who file civil actions for damages, and, therefore, the special master lacked jurisdiction over the petition and therefore lacked jurisdiction to award attorneys' fees and costs. *Id* at 1407.   In a different context, however, the Federal Circuit subsequently distinguished the "persons [who] 'may not' file a petition" contained in section 11(a) from the language of section 11(b)(1)(A) which explains who may file a petition. *Figueroa v. Sec'y of Health & Human Servs.*, 715 F.3d 1314, 1322 (Fed. Cir. 2013).  In *Figueroa* the Circuit reversed the special master's determination that the petitioner lacked standing to file the petition because she did not fall within the specific language of section 11(b)(1)(A). While that section allows petitions by "the legal representative of any person who died as the result of the administration of a vaccine . . .," the *Figueroa* petitioner was the estate representative of an individual who suffered a vaccine injury but subsequently died from an unrelated condition.  The Circuit rejected the government's argument that section 11(b)(1)(A) represented an exclusive list of persons who may file while also applying the canon *expressio unius est exlusio alteris* ("the term left out must have been meant to be excluded") to further conclude that the *Figueroa* petitioner was not specifically precluded from filing as a person who "may not" file a petition under 300aa-11(a).  *Id.* at 1322.  This would seem to leave open the question of whether section 300aa-11(b)(1)(A) at issue in this case, considered a non-exhaustive list of those who may file a petition, could be considered jurisdictional in the same manner as section 300aa-11(a), which has been identified as jurisdictional, but which has been interpreted as an exhaustive list of those who "may not" file.

[6] The specific issue addressed by the Supreme Court in *Sebelius v. Cloer* was whether a claim filed after expiration of the statute of limitation was eligible for an award of attorneys' fees and costs.  Section 15(e) of the Vaccine Act is couched as relating to petitions filed under section 11 of the Vaccine Act. *Id.* at 376. The government argued in *Sebelius* that if a petition failed to meet statutory prerequisites to filing, such as the statute of limitation under section 16 of the Vaccine Act, it was therefore not a petition filed under section 11 and therefore not eligible for attorneys' fees and costs.  The Supreme Court rejected that argument and explained that "[n]othing in these two provisions [referring to section11 and section 15] suggests that the reason or the subsequent dismissal of a petition, such as its untimeliness, nullifies the initial filing of that petition."  *Id.*  The Court stressed that section 15(e) was intended to address unsuccessful petitions and that "so long as such a petition was brought in good faith and with a reasonable basis, it is eligible for an award of attorney's fees, even if it is ultimately unsuccessful." *Id.* The Court explained that "[a] petition filed in violation of the limitations period will not result in the payment of compensation, of course, but it is still a petition filed under §300aa-11(a)(1)." *Id.* at 377.  However, the Supreme Court ruled at least in part on the basis that the statute of limitation question does not present a jurisdictional issue and also that the statute of limitation at section 16 is not cross referenced in section 11 as a filing requirement.  The court indicated that if the limitation period was jurisdictional, it might have reached a different result.  *Id.* at n 5.

**IT IS SO ORDERED.**

<u>**s/Daniel T. Horner**</u>
Daniel T. Horner
Special Master